LYKES BROS. STEAMSHIP CO.,
INC., Plaintiff,

v.

WAUKESHA BEARINGS CORPORA-
TION and Union Carbide Corpora-
tion, Defendants.

Civ. A. No. 76–1349.

United States District Court,
E. D. Louisiana.

Sept. 18, 1981.

Andrew T. Martinez, New Orleans, La., for plaintiff.

Gerard M. Dillon, New Orleans, La., for defendant Waukesha Bearings Corp.

Robert M. Contois, Jr., New Orleans, La., for defendant Union Carbide.

CASSIBRY, District Judge:

The trial of this case was initially limited to the issue of liability. This court entered findings of fact and conclusions of law in favor of plaintiff, Lykes Bros. Steamship Co., Inc. (Lykes) and against Waukesha Bearings Corporation for damages sustained as a result of a defective valve installed on the ALMERIA LYKES in May of 1975. However, the court rejected Lykes' claim against Waukesha and Union Carbide Corporation seeking recovery of damages on account of a failed ceramic coated liner also installed on the ALMERIA LYKES in May of 1975. On April 29, 1981 this court held a hearing on damages caused by the failure of the valve.

At the hearing, Lykes presented evidence concerning the following direct expenses incurred during the repair period.

1. Expenses of J. H. Carriere, Lykes' Port Engineer (Plaintiff's Exhibit 1)     $ 405.00

2. Mobil Oil Corporation, replacement of oil in the stern tube assembly system (Plaintiff's Exhibit 2)     1,685.77

3. Defective check valve provided by Waukesha Bearings Corporation (Plaintiff's Exhibit 3)     75.00

4. American Bureau of Shipping, Seaworthiness Certificate (Plaintiff's Exhibit 4)     220.00

5. Newport News Shipbuilding and D. D. Co., repairs, etc. (Plaintiff's Exhibit 5 A & B)     67,621.37

6. International Paint Co., Inc., bottom paint (Plaintiff's Exhibit 6)     5,109.95

7. Virginia Pilots, reentry and departure Newport News (Plaintiff's Exhibit 7 A & B)     1,596.00

8. Hasler & Co., entering and clearing ship (Plaintiff's Exhibit 8)     70.00

9. U. S. Lines, agency fee (Plaintiff's Exhibit 9)     475.00

sub-total     $77,258.09

These expenses were not contested by defendant, Waukesha, and will accordingly be awarded as damages.

The only disputed item of damages concerns the proper calculation of detention loss incurred by the ALMERIA LYKES when it was forced to return to Newport on June 5, 1975 because of the leaking valve. Demurrage, loss of profits from loss of the use of the vessel, has traditionally been an element of compensable damages in admiralty. *Skou v. United States*, 478 F.2d 343 (5th Cir. 1973). However, it is only recoverable when profits "have actually been or are reasonably certain to have been lost and the amount of such profits is proven with reasonable certainty." *The Conqueror*, 166 U.S. 110, 17 S.Ct. 510, 516, 41 L.Ed. 937 (1897). In *Moore-McCormick Lines v. The Esso Camden*, 244 F.2d 198 (2d Cir. 1957), the court determined the average daily loss of a vessel by dividing the total earnings from the pre-collision, collision, and post-collision voyages by the total days spent on all three voyages. This method of computing the average daily profit is preferable to calculating an average daily profit figure for *each* voyage and then averaging those figures since it avoids the unreliability introduced when averaging averages.

The parties agree that the vessel was out of service for 19.86 days from June 5, 1975 to June 25, 1975 and that she lost employment by reason of the repairs. *See The James McWilliams*, 42 F.2d 130 (2d Cir. 1930). However, they differ as to the proper method of computing the average daily earnings figure for the ALMERIA LYKES. Plaintiff introduced uncontroverted evidence indicating the following profit and loss figures for five voyages of the ALMERIA LYKES:

| Voyage | Duration | Direct Profit or Loss |
|---|---|---|
| 22 | 39 | $152,751.79 |
| 23 | 38 | 132,368.87 |
| 24 | 33 | (121,512.99) |
| 26 | 35 | 218,835.10 |
| 28 | 36 | 291,549.82 |
| TOTALS 5 voyages | 181 days | $673,992.59 |

Using the method in *Moore-McCormick* set out above he calculates an average daily profit of $3,723.72 ($673,992.52 total profit from 5 voyages divided by 181 days).[1] However, on cross-examination, the Lykes witness responsible for the calculation of the figures admitted that the totals for voyages 26 and 28 were probably somewhat distorted because of the casualties on the preceding voyages.

■ Admiralty law generally recognizes that when voyages do not fairly represent normal average earnings they should not be considered. *Moore-McCormick, supra,* at 201 n.3; *The Gylfe v. The Trujillo,* 209 F.2d 386 (2nd Cir. 1954); The Quevilly-Sampson, 1938 A.M.C. 347 (S.D.N.Y.1937). Since the figures for voyages 26 and 28 do not appear to be representative, I have made the following calculations based on voyages 22, 23 and 24:

| Voyage | Duration | Direct Profit or Loss |
|---|---|---|
| 22 | 39 | $152,751.79 |
| 23 | 38 | 132,368.87 |
| 24 | 33 | (121,512.99) |
| | 74 days | $163,607.67 |

AVERAGE DAILY PROFIT
$163,607.59 — 77 days = $1,487.34

TOTAL DEMURRAGE LOSS
$1,487.34 x 19.86 = $29,538.57

Accordingly, judgment will be entered in favor of Lykes Bros. Steamship Co., Inc., for total damages of $106,796.66.

---

**1.** Plaintiff's witness, George Baurbert, did not provide any figures for voyage 25, the valve casualty voyage for which Waukesha was held liable, or voyage 27, the line casualty voyage for which Waukesha was absolved, on the grounds that the delays involved in both voyages made them unrepresentative.